UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____

|   |   |   |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TRI-WIRE ENGINEERING SOLUTIONS, INC. | ) | |
| | ) | Case No. 21-11322-CJP |
| Debtor. | ) | |

_____

## DEBTOR'S MOTION FOR AUTHORITY TO EMPLOY AND COMPENSATE CERTAIN PROFESSIONALS IN THE ORDINARY COURSE OF BUSINESS

Tri-Wire Engineering Solutions, Inc. (the "Debtor") hereby moves this Court for entry of an order pursuant to Sections 105, 363 and 1108 of the Bankruptcy Code authorizing the Debtor's employment of and payment of compensation to certain ordinary course professionals. In support of this Motion, the Debtor states as follows:

### Background

1.      On September 13, 2021 (the "Petition Date"), the Debtor filed a voluntary petition with this Court commencing this Chapter 11 case. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its business and financial affairs as a debtor-in-possession. No creditors' committee has yet been appointed.

2.      The Debtor is engaged in business in the telecommunications industry. Formed in 1999, the Debtor has grown to be one of the largest independent providers of consumer broadband installation and maintenance services for large cable and telecom operators in the Northeastern United States. Currently, the Debtor operates from 20 locations in nine states, and is one of the dominant providers of installation (also known as fulfillment) services in these states. While the Debtor's fulfillment operations generate approximately 87 percent of its

revenue, the Debtor has recently expanded its business to include: (i) constructing, installing,

and maintaining fiber connection to consumer homes ("FTTH"); (ii) constructing

telecommunications networks for municipalities and corporate customers; (iii) providing cable

and broadband fulfillment for digital, data, and voice services; and (iv) supplying low-voltage,

network, and data center wiring to meet WiFi and IT infrastructure needs.

3. The Debtor provides its services through its own staff of 396 employees—

primarily consisting of telecommunication technicians—located among the Debtor's 20 offices,

and through approximately 182 technicians made available through third-party vendors under

subcontractor agreements with the Debtor.[1] The Debtor's operations generated approximately

$55,000,000 in revenue in 2020; in the first six months of 2021, the Debtor generated revenue of

approximately $26,000,000. Spanning thirteen highly-competitive markets, the Debtor averages

approximately 10,000 service events each week.

4. Since December 2016, the Debtor has been employee-owned through an

employee stock ownership plan ("ESOP"). The equity interests in the Debtor, which were

acquired from John R. Wade, III, the Debtor's former sole stockholder, in the December 2016

transaction (the "ESOP Transaction"), are held by the Tri-Wire Employee Stock Ownership

Trust (the "ESOP Trust") for the benefit of employees, whose beneficial interests are determined

through the governing agreements based on factors such as duration of employment,

compensation level, and employee contributions.

5. The ESOP Transaction was financed with loans and credit facilities provided by

JPMorgan Chase Bank, N.A. ("JPM") and Massachusetts Capital Resource Company ("MCRC")

in the aggregate amount of approximately $28.5 million. Of that amount, $20.5 million was

advanced by the Debtor to the ESOP Trust, and thereafter paid to Mr. Wade as the purchase

---

[1] Another 16 individuals work on the Debtor's construction projects through agreements with subcontractors.

price for the Debtor's stock; the balance was an $8 million revolving line of credit made

available by JPM to support the Debtor's working capital needs.[2]  These loans are secured by

security interests in all of the Debtor's assets, with JPM's liens having priority over MCRC's

liens.  As of the Petition Date, the Debtor owes JPM approximately $10.7 million (excluding an

additional $6.2 contingent liability on letters of credit issued by JPM for the Debtor's benefit)

and MCRC approximately $7.4 million.  The Debtor also owes approximately $870,000 to

Massachusetts Growth Capital Corporation for a working capital loan made in winter 2020; this

loan is also secured by an all-asset lien subordinate to those held by JPM and MCRC.  In

addition to this secured indebtedness, the Debtor has approximately $27 million in unsecured

liabilities, including approximately $24.4 million in stock redemption debt owed to Mr. Wade in

connection with the redemption of shares not sold to the ESOP Trust at the time of the ESOP

Transaction (the "Wade Redemption Debt"),[3] and approximately $2.6 million in accounts

payable owed to trade creditors and contract parties.

6.      The Debtor's substantial debt obligations, combined with onerous workers'

compensation and automobile insurance expenses,[4] have created a substantial burden on the

Debtor's cash flow and consequently have substantially impaired the Debtor's ability to react

both to the stresses of the COVID-19 pandemic and to the competitive factors in its industry.

Customer forecasts following the pandemic were overly ambitious, and the missed forecasts

---

[2] At present, $6.2 million of the revolving line's availability is allocated to the Debtor's contingent liability to JPM on account of letters of credit in equal amount issued by JPM as security for the Debtor's obligations under high-deductible auto and workers compensation insurance policies.

[3] Prior to the ESOP Transaction, Wade owned 1,520,000 shares of the Debtor's common stock.  820,000 shares were sold to the ESOP Trust; the remaining 700,000 shares were redeemed by the Debtor for a purchase price of $17,500,000, payable under two notes issued to Wade.  The current balance of the Wade Redemption Debt reflects interest accrued on that debt since its issuance.

[4] Before consummating the ESOP Transaction, Mr. Wade converted the Debtor's auto insurance coverage to a paid-loss retroactive policy, thus deferring to a future date the true expense associated with such auto insurance prior to that date.  In addition, the Debtor under Mr. Wade's management—his employment was terminated in 2018—consistently mismanaged its auto claims exposure, failing to address and negotiate claim settlements in a timely and effective manner.

resulted in lower than projected revenues for the Debtor.  Supply chain disruptions and

associated shortages of needed materials, as well as severe weather in the first quarter of 2021,

hindered the completion of construction projects.  In addition to these economic challenges, the

Debtor faced stiff competition from similarly situated employers—in the current tight labor

market, competitors have offered higher and faster payment terms to contractors making it more

costly (and difficult) for the Debtor to retain the technicians required to fulfill its obligations to

its customers.  Finally, the Debtor's lack of working capital has slowed the development of the

Debtor's FTTH and construction business, which the Debtor considers its most significant

opportunity for future growth and profitability.

7.      In July 2021, the Debtor, responding to its increasing financial difficulties,

retained SSG Advisors, LLC ("SSG"), a well-known investment banking firm with a

specialization in marketing distressed companies, to conduct an expedited sale process for the

Debtor's business.  That process led to negotiations with an interested bidder, ITG

Communications, LLC ("ITG"), whereby ITG has agreed to purchase substantially all of the

Debtor's assets on a going concern basis pursuant to Section 363 of the Bankruptcy Code,

subject to higher or better offers (including from ITG itself) as may be made through a

competitive sale process to be authorized by the Bankruptcy Court (the "Proposed Sale").  The

Debtor has filed this Chapter 11 case to effect the Proposed Sale.

8.      Prior to the Petition Date, the Debtor utilized attorneys, consultants and other

persons who are "professionals" in the non-bankruptcy sense to render services to the Debtor

incident to its ordinary course business operations (the "Professionals").  The services provided

by these Professionals are in support of the Debtor's ongoing, ordinary course business

operations conducted pursuant to Section 1108 of the Bankruptcy Code, and are not directed

toward supporting the Debtor's duties under Section 1107 of the Bankruptcy Code as debtor-in-possession.

9.      A list of the Professionals that the Debtor currently desires to employ in the ordinary course pursuant to this Motion is attached hereto as Exhibit A.  The Debtor reserves the right to supplement this Motion to include additional Professionals, as set forth herein.  As to the Professionals listed on Exhibit A:  (i) Donnelly, Conroy & Gelhaar LLP is the Debtor's litigation counsel in the Wade Litigation; (ii) Morgan, Brown & Joy LLP serves as the Debtor's litigation counsel in *Rodriguez, et al. v. Tri-Wire Engineering Solutions, Inc., et al.*, Civil Action No. 1:21-cv-10752-PBS (the "Rodriguez Case"); and (iii) TerraStrata LLC is an industrial hygiene consultant retained by the Debtor to develop a plan to remediate contamination, caused by an adjoining tenant, affecting its Woburn warehouse facility.

10.      The Debtor anticipates a minor need for the Professionals' services, and therefore *de minimis* expense for these services.  As a result of the Debtor's bankruptcy filing, the Rodriguez Case has been stayed as to the Debtor pursuant to Bankruptcy Code Section 362(a).  Although the claims against the Debtor in the Wade Litigation have been dismissed, leaving only the Debtor's counterclaims to be litigated, the Debtor anticipates that there will be a pause in that action as well.  Accordingly, the Debtor's litigation counsel—Donnelly, Conroy & Gelhaar LLP and Morgan, Brown & Joy LLP—will not be required to expend significant efforts in the stayed matters, providing only periodic advice to the Debtor in connection with the sale process and an eventual resolution of this Chapter 11 case.  The Debtor has budgeted $7,500 each for the litigation counsels' services per three-month Payment Period (as defined herein).  Similarly, TerraStrata LLC's consulting services are needed only to provide advice with respect to a narrowly focused clean-up project.  Following completion of the project, the Debtor does not

anticipate requiring significant services by TerraStrata LLC.  The Debtor has budgeted $15,000

for TerraStrata LLC's services per Payment Period.

### Relief Requested

11.     The Debtor by this Motion seeks authority pursuant to Sections 105, 363, and

1108 of the Bankruptcy Code to continue to utilize the Professionals on an as-needed basis

subsequent to the Petition Date, without having to file formal retention or fee applications for

each of the Professionals pursuant to Sections 327 through 331 of the Bankruptcy Code.  Given

the ordinary, non-bankruptcy related nature of the Professionals' services, the Debtor submits

that the requested relief is appropriate under Sections 363 and 1108 of the Bankruptcy Code.

Moreover, given the anticipated minor need for the Professionals' services, and the

corresponding anticipated *de minimis* compensation to be paid to the Professionals for their

services, requiring the same formal employment and fee application process for the Professionals

as is applicable to the Debtor's Chapter 11 professionals would impose an unnecessary

administrative burden on the estate, this Court, and parties in interest.

12.     The Debtor submits that its ability to employ and compensate the Professionals in

the manner proposed herein is in the best interests of its estate and its creditors.  If the Debtor

were to lose access to the expertise and background knowledge of the Professionals with respect

to the particular areas and matters for which they were responsible prior to the Petition Date, the

estate would likely incur additional and unnecessary expenses as the Debtor would need to retain

other professionals without such background and expertise.  Therefore, it is in the best interests

of the estate and its creditors that the Debtor continue to utilize the Professionals whose services

they require in the day-to-day operation of its business.

13.     Notwithstanding that the Debtor seeks to employ the Professionals pursuant to Sections 363 and 1108 of the Bankruptcy Code, the Debtor believes that disclosure of each Professional's connections to the Debtor and other interested parties is appropriate, and to that end propose that each Professional be required to file with the Court a declaration of its connections consistent with Fed. R. Bankr. P. 2014 and MLBR 2014-1, in substantially the form attached as Exhibit B (the "Declaration of Proposed Professional"), and serve copies thereof (by email including through the Court's ECF system shall be sufficient) upon the following persons (collectively, the "Notice Parties"):

(A)     the Debtor, by service to Tri-Wire Engineering Solutions, LLC, 3 Gill St., Woburn, MA, 01801, Attn: Ruben Klein, President, Attn: Ruben Klein, President, email: rklein@triwire.net;

(B)     the Debtor's bankruptcy counsel, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: Michael J. Goldberg, Esq., Fax (617) 426-8810, email: goldberg@casneredwards.com;

(C)     the Office of the United States Trustee, 5 Post Office Square, Suite 1000, Attn: Paula Bachtell, Esq., Fax (617) 565-6368, email: paula.bachtell@usdoj.gov;

(D)     counsel to JPMorgan Chase Bank, N.A., the Debtor's senior secured lender, Seyfarth Shaw, LLP, Attn: William Hanlon, Esq., Two Seaport Lane, Boston, MA 02210, email: whanlon@seyfarth.com; and

(E)     counsel to the any statutory committee appointed in this case (at the address designated by such counsel).

No Professional providing services to the Debtor will receive payment for post-petition services rendered until its Declaration of Proposed Professional has been filed with the Court and served on the Notice Parties.  Each Professional's Declaration of Proposed Professional shall be filed and served within thirty (30) days after such Professional receives from the Debtor notice of entry of an Order granting the relief requested in this Motion.[5]

---

[5] The Debtor reserves the right to amend Exhibit A to include any additional professionals whose ordinary course services the Debtor requires (each, a "Supplemental Professional").  The Debtor proposes that each Supplemental

14.     The Debtor proposes that the Notice Parties shall have ten (10) days after the receipt of each Professional's Declaration of Proposed Professional (the "Objection Deadline") to object to the retention of such Professional.  On or before the Objection Deadline, the objecting Notice Party shall file and serve any such objections upon all other Notice Parties and the Professional who is the subject of any such objection.  If no objection is received from the Notice Parties within ten (10) days after the filing of the Declaration of Proposed Professional, or if such objection is promptly resolved by the Debtor and the objecting party, the Debtor shall be authorized to retain such Professional as a final matter.  If any such objection cannot be promptly resolved, the Debtor may seek an order of the Court authorizing the Debtor's employment of the Professional on such terms and conditions as the Court may specify.

15.     Although certain of the Professionals may hold unsecured claims against the Debtor, the Debtor does not believe that any of the Professionals have an interest materially adverse to the Debtor, its estate, creditors, or other parties-in-interest with respect to the matters for which any Professional is to be engaged.  Nor does the Debtor believe that any such claims will hinder the Professionals from rendering services during the pendency of this Chapter 11 case.  By this Motion, the Debtor is not requesting authority to pay prepetition amounts owed to Professionals.

16.     The Debtor further requests that the Court authorize it to compensate the Professionals in the ordinary course of business, so long as the total compensation paid to a particular Professional (i) for services rendered during any three calendar month period (the "Payment Period") commencing with the period September through November, 2021 does not exceed 110 percent of the designated "Budget Amount" amount set forth on Exhibit A to the

---

Professional shall have thirty (30) days from its receipt from the Debtor of an amended Exhibit A to file a Declaration of Proposed Professional and serve it upon the Notice Parties, and that the provisions of paragraphs 12 and 13 shall apply to such Declaration of Proposed Professional.

Motion for such Professional (a "Permitted Payment"), unless any excess over such Permitted

Payment amount is (a) the subject of a notice of proposed excess compensation served upon the

Notice Parties and not objected to in writing delivered to the Debtor within 10 days after service

of such notice, or (b) approved by separate order of this Court.  The Debtor also requests

authority to reimburse the reasonable out-of-pocket expenses of each Professional incurred

incident to the Professional's provision of services to the Debtor in the manner agreed to by the

Debtor in the ordinary course of its relationship with such Professional.  Notwithstanding

anything to the contrary set forth herein, any payment to a Professional, including any Permitted

Payments, shall be made subject to and only to the extent authorized by any orders of the Court

approving the use of cash collateral by the Debtor and any budget in connection therewith.

17.    The relief sought by this motion applies only to the Professionals specifically

addressed herein, and will not apply to attorneys or other professionals retained or to be retained

by the Debtor to support the Debtor's discharge of its duties as debtor-in-possession under

Section 1107 of the Bankruptcy Code, whose employment and compensation will be subject to

separate Court orders approving employment and compensation under Sections 327 through 331

of the Bankruptcy Code.

**Basis for Relief**

18.    The Professionals will not be involved in the administration of this Chapter 11

case, but, rather, will provide services in connection with the Debtor's ongoing business

operations or services ordinarily provided by in-house counsel to a corporation.  The

Professionals are "professionals" in the non-bankruptcy sense and not "professionals" as that

term is used in Section 327 of the Bankruptcy Code, whose retention must be approved by the

Court.  See, e.g., In re Napoleon, 233 B.R. 910, 913 (Bankr. D. N.J. 1999) (holding that "[i]n

order to be considered a 'professional person' within the meaning of Section 327 . . . he or she . . . must play an integral role in administration of the bankruptcy case"); In re First Merchs. Acceptance Corp., Case No. 97-1500 (JJF), 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (developing a nonexclusive list of factors to determine whether an entity to be employed by a debtor is a professional within the meaning of Section 327(a)); In re Argus Grp. 1700, Inc., 199 B.R. 525, 534 n.18 (Bankr. E.D. Pa. 1996) ("the term 'professional person' is a 'term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate'"); In re That's Entm't Mkt'g Group, Inc., 168 B.R. 226, 230 (N.D. Cal. 1994) (holding that only the retention of professionals whose duties are central to the administration of the estate require prior court approval under Section 327); In re Madison Mgmt. Grp., Inc., 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992) (same); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (holding that only those professionals involved in the actual reorganization effort, rather than the debtor's ongoing business require approval under Section 327).

19.     Because the Professionals' services support the Debtor's ongoing business operations conducted pursuant Section 1108 of the Bankruptcy Code, and not the Debtor's performance of ots duties as debtor-in-possession set forth in Section 1104 of the Bankruptcy Code, the Debtor submits that the Professionals' services do not fall within the ambit of Section 327 of the Bankruptcy Code, and that the Debtor's proposed employment of and payments to the Professionals constitutes an ordinary course use of estate property permitted under Section 363 of the Bankruptcy Code (subject to Court authority to use cash collateral for payments to Professionals).  Out of an abundance of caution, the Debtor seeks the relief requested in this Motion to avoid any subsequent controversy regarding the Debtor's employment and payment of

the Professionals during the pendency of this case.  The Debtor submits that Section 105(a) of

the Bankruptcy Code provides additional authority for the Court to grant the requested relief.

20.    Courts in this district have granted the same or similar relief to debtors in other

Chapter 11 cases.  <u>See</u>, <u>e.g.</u>, <u>In re Community Intervention Services</u>, Case No. 21-40002-EKD

(Bankr. D. Mass. Feb. 4, 2021) [Docket No. 159]; <u>In re Oscient Pharm. Corp.</u>, Case No. 09-

16576 (HJB) (Bankr. D. Mass. July 31, 2009) [Docket No. 152]; <u>In re the Educ. Res. Inst., Inc.</u>,

Case No. 08-12540 (HJB) (Bankr. D. Mass. June 11, 2008) [Docket No. 305]; <u>In re Syratech</u>

<u>Corp.</u>, Case No. 05-11062 (RS) (Bankr. D. Mass. Feb. 22, 2005) [Docket No. 126]; <u>In re Malden</u>

<u>Mills Indus., Inc.</u>, Case No. 01-47214 (JBR) (Bankr. D. Mass. Mar. 11, 2002) [Docket No. 256].

## **Notice**

21.    The Debtor is providing notice of this Motion to: (a) the Office of the United

States Trustee; (b) the Debtor's 20 largest unsecured creditors as reflected in the consolidated list

filed by the Debtor pursuant to Fed. R. Bankr. P. 1007(d); (c) all known secured creditors; and

(d) all entities that have requested notice in this case.  The Debtor submits that, given the nature

of the relief requested herein, no other or further notice is necessary.

**Conclusion**

**WHEREFORE**, the Debtor respectfully requests that this Court: (a) enter an order, in substantially the form attached hereto, granting the Motion; and (b) grant such other and further relief as this Court deems just and proper.

Dated:  September 20, 2021          TRI-WIRE ENGINEERING SOLUTIONS, INC.

By its attorneys,

*/s/ Hanna J. Ciechanowski*
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
Hanna J. Ciechanowski (BBO #705222)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Email: ciechanowski@casneredwards.com

## **Exhibit A**

## **List of Professionals**

| Professional Period | Budget Amount per 3-month Payment |
|---|---|
| Donnelly, Conroy & Gelhaar LLP | $7,500.00 |
| Morgan, Brown & Joy LLP | $7,500.00 |
| TerraStrata LLC | $15,000.00 |

**<u>Exhibit B</u>**

[Form of Declaration of Proposed Professional]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

—————————————————————————
                                    )
In re:                              )
                                    )        Chapter 11
TRI-WIRE ENGINEERING SOLUTIONS, INC.    )
                                    )        Case No. 21-11322-CJP
                        Debtor.     )
—————————————————————————  )


**DECLARATION OF _____ IN SUPPORT OF
EMPLOYMENT OF _____ AS A PROFESSIONAL TO RENDER
SERVICES IN THE ORDINARY COURSE OF BUSINESS**

I, _____, hereby declare and state as follows:

1.      I am a member of the firm of _____ which maintains offices

at _____ (the "Firm").  I submit this declaration pursuant to the

Debtor's Motion for Authority to Employ and Compensate Certain Professionals in the Ordinary

Course of Business (the "Motion") filed by Tri-Wire Engineering Solutions, Inc. (the "Debtor").

2.      Prior to the commencement of this case, the Firm was retained by the Debtor to

provide advice and assistance in connection with _____.

3.      The Debtor owe the Firm approximately $_____ for prepetition services

rendered by the Firm to the Debtor.

4.      The Debtor has requested that the Firm continue to provide _____ services

to the Debtor, and the Firm has consented to provide such services provided that it be paid

promptly for such services.

5.      To the best of my knowledge, my and the Firm's connections with the Debtor, its

creditors, other parties in interest, their respective attorneys, accountants or other professionals,

or the United States Trustee for this district are as follows:

_____

_____

6.      The Firm may have performed services in the past and may perform services in the future, in matters unrelated to this Chapter 11 case, for persons that are parties-in-interest in the Debtor's Chapter 11 case.  As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtor, claimants and parties-in-interest in this Chapter 11 case.

7.      To the best of my knowledge, neither I nor any member of or professional employed by the Firm, holds or represents any material interest adverse to the Debtor or its estate with respect to the matters on which the Firm is to be employed, and except as set forth in Paragraph 3 with respect to amounts owed to the Firm by the Debtor, the Firm and each of its members is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code.

8.      In accordance with the Motion, the Firm intends to invoice the Debtor directly for services rendered to the Debtor and for any reimbursement of expenses incident to the services rendered.  I understand that, to the extent that the Firm's fees for services rendered to the Debtor exceed the amount of the Permitted Payment to the Firm (as computed consistent with the Motion including the Budget attached as Exhibit A to the Motion), the Firm would need to comply with the notice provisions of the Motion, and any subsequent court order, regarding such excess compensation.

9.      No promises have been made by me, the Firm, or by any member or professional employed by the Firm as to compensation in connection with this case other than in accordance with the Motion and any applicable provisions of the Bankruptcy Code.

10.     I hereby represent that neither I nor any member of or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtor with any other persons, other than the members and regular employees of the Firm as permitted pursuant to Section 504(b)(1) of the Bankruptcy Code.

11.     If any time during the period of its employment, the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this ___ day of _____, 2021 at _____, Massachusetts.


_____
[NAME]

**<u>Exhibit C</u>**

[Proposed Order]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TRI-WIRE ENGINEERING SOLUTIONS, INC. | ) | |
| | ) | Case No. 21-11322 |
| Debtor. | ) | |

**ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND COMPENSATE
CERTAIN PROFESSIONALS IN THE ORDINARY COURSE OF BUSINESS**

Upon consideration of the Debtor's Motion for Authority to Employ and Compensate

Certain Professionals in the Ordinary Course of Business (the "Motion") filed by Tri-Wire

Engineering Solutions, Inc. (the "Debtor"); and after due deliberation and sufficient cause

appearing therefore; it is hereby

**ORDERED**, that:

1. The Motion is granted.

2. The Debtor shall be authorized to retain each Professional[1] (as defined in the

Motion) in accordance with the following procedures:

a. each proposed Professional is required to file a Declaration of
Proposed Professional with the Court and to serve a copy thereof (by
email including through the Court's ECF system shall be sufficient) on
each of the Notice Parties. Each Professional's Declaration of Proposed
Professional shall be filed and served within thirty (30) days after such
Professional receives from the Debtor notice of entry of an Order granting
the relief requested in the Motion. No Professional providing services to
the Debtor will receive payment for post-petition services rendered until
the Declaration of Proposed Professional has been filed with the Court and
served on the Notice Parties.

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

b.      Each Notice Party shall have ten (10) days after the receipt of each Professional's Declaration of Proposed Professional (the "Objection Deadline") to object to the retention of such Professional. The objecting Notice Party shall file and serve any such objections upon all other Notice Parties and the Professional who is the subject of any such objection on or before the Objection Deadline. If no objection is received from the Notice Parties within ten (10) days after the filing of the Declaration of Proposed Professional, or if such objection is promptly resolved by the Debtor and the objecting party, the Debtor shall be authorized to retain such Professional as a final matter. If any such objection cannot be promptly resolved, the Debtor may seek an order of this Court approving the retention of such firm as a Professional or any other relief that the Debtor deems appropriate.

c.      to the extent that the Debtor amends Exhibit A to the Motion to include any additional Professional and a budgeted compensation amount for such Professional  (each, a "Supplemental Professional"), each Supplemental Professional shall have thirty (30) days after its receipt from the Debtor of notice of the filing of the amended Exhibit A to file a Declaration of Proposed Professional and serve it upon the Notice Parties, whereupon the procedures set forth in subparagraph (b) above shall apply with respect to such Declaration of Proposed Professional.

3.      Without further order of this Court, the Debtor is authorized but not required to pay each Professional as frequently as monthly for post-petition services rendered and related expense reimbursement, provided, however, that the total compensation paid to a particular Professional during any calendar quarter (or, as applicable, for a specific task) may not exceed 110 percent of the designated "Budget Amount" amount set forth on Exhibit A to the Motion for such Professional (a "Permitted Payment"), unless any excess over such Permitted Payment amount is (a) the subject of a notice of proposed excess compensation served upon the Notice Parties and not objected to in writing delivered to the Debtor within 10 days after service of such notice, or (b) approved by separate order of this Court. The Debtor is also authorized to reimburse the reasonable out-of-pocket expenses of each Professional incurred incident to the Professional's provision of services to the Debtor in the manner agreed to by the Debtor in the ordinary course of its respective relationships with such Professional.

4.     Notwithstanding anything to the contrary set forth in this Order, any payment to a

Professional, including any Permitted Payments, shall be made subject to and only to the extent

authorized by any orders of the Court approving the use of cash collateral by the Debtor and any

budget in connection therewith.

5.     This Court retains jurisdiction to address any disputes or matters arising with

respect to the Debtor's utilization and compensation of Professionals pursuant to this Order.


Dated: _____, 2021                    _____

                                                Hon. Christopher J. Panos
                                                United States Bankruptcy Judge