UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRI-WIRE ENGINEERING SOLUTIONS, INC., LLC, | ) ) ) | Case No. 21-11322-CJP |
|  | ) |  |
| Debtor | ) ) |  |

**UNITED STATES TRUSTEE'S OBJECTION
TO DEBTOR'S MOTION FOR AN ORDER (A) APPROVING
PROCEDURES GOVERNING DEBTOR'S PROPOSED SALE OF
SUBSTANTIALLY ALL ASSETS PURSUANT TO SECTION 363
AND 365 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF
LIENS, CLAIMS, AND INTERESTS; (B) APPROVING FORM AND
MANNER OF NOTICE OF SALE; (C) APPROVING DEBTOR'S
ASSUMPTION OF ASSET PURCHASE AGREEMENT PURSUANT
TO SECTION 365 OF THE BANKRUPTCY CODE; AND (D)
GRANTING RELATED RELIEF
(WITH CERTIFICATES OF SERVICE AND CONFERENCE)**

William K. Harrington, the United States Trustee for Region 1, objects to the motion ("Sale Procedures Motion") (Docket #11) for an order approving procedures governing proposed sale of substantially all assets pursuant to section 363 and 365 of the Bankruptcy Code, free and clear of liens, claims, and interests to ITG Communications, LLC ("ITG") filed by Tri-Wire Engineering Solutions, Inc. ("Debtor").

1

The proposed terms, if approved, will chill the sale by unnecessarily requiring any counterbid to be at least $700,000, or 7.95%, more than ITG's stalking horse bid.

## PRELIMINARY STATEMENT

The Debtor filed for bankruptcy eight days ago. It simultaneously filed a motion to sell substantially all of its assets to ITG, subject to higher and better bids.

In the Bid Procedures Motion, the Debtor requests Court authorization to protect ITG, in advance, by requiring any counterbidder to pay at least $700,000 more than ITG's stalking horse bid, consisting of a break-up fee of $352,000, reimbursement of ITG's expenses of up to $150,000 and a minimum overbid of $198,000.

ITG's bid, as incorporated into the parties' asset purchase agreement, is not contingent upon the Court's approving the fees, the reimbursement or the overbid.

A debtor has a fiduciary duty to maximize value for creditors. Break-up fees and cost reimbursements for stalking horse bidders should arguably be approved by Court as "actual and necessary costs and expenses of preserving the estate" under 11 U.S.C. § 503(b), not under the business judgment rule of 11 U.S.C. § 363(b).

ITG's bid protections fail either test, however, because requiring counterbidders to pay $700,000 for them, just to enter the auction process, will

discourage interest parties from making bids, violating the Debtor's fiduciary duty of maximizing value for creditors.

Because the harm posed by these protections outweighs their benefit to the estate, the Court should deny them, defer considering them until after the auction has been conducted or reduce them.

## JURISDICTION, VENUE AND BASIS FOR RELIEF

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409.

4. The legal basis for relief includes 28 U.S.C. § 586(a)(3), 11 U.S.C. §§ 307, 363(b) and 503(b), Fed. R. Bankr. P. 6004 and MLBR 6004-1.

5. By order dated September 15, 2021 (Docket #31), the Court established September 21, 2021 at 4:00 p.m. as the deadline for objecting to the Sale Procedures Motion.

6. This objection is therefore timely.

## FACTS

7. The Debtor filed its voluntary chapter 11 petition on September 13, 2021.

8.  That same day, it filed a motion to sell (Docket #s9) ("Sale Motion") substantially all of its assets to ITG under an asset purchase agreement (Docket #9-1) ("APA"), subject to higher and better bids submitted through a public auction process.

9.  The United States Trustee has solicited for a creditors' committee. Neither the Sale Motion nor the APA requires that bids be approved with the involvement of any committee, however.

10. Based on the Sale Motion, the APA, the Bid Procedures Motion, related order (Docket #11-1) and exchanges with the Debtor's attorneys on September 20, 2021, the United States Trustee understands that any bid offered by a qualified counterbidder ("Initial Minimum Bid") must total at least $700,000, or approximately 7.95%, more than ITG's stalking horse bid, broken down as follows:

| | | |
|---|---|---|
| Sale price to ITG per APA | $ | 8,800,000 |
| ITG's break-up fee | $ | 352,000 |
| ITG's expense reimbursement | $ | 150,000 |
| Minimum overbid | $ | 198,000 |
| Initial Minimum Qualifying Bid per APA | $ | 9,500,000 |

11. ITG's stalking horse bid is not contractually contingent upon the Court's approving the break-up fee, the expense reimbursement or the minimum overbid. APA at § 6.3 (providing "Upon execution and delivery of this Agreement by both Seller and Purchaser, and upon Seller's commencement of the Bankruptcy Case, Seller shall, subject to Section 6.4 ["Alternative Transaction"] promptly undertake, to obtain entry of the Bid Procedures Order and the Sale Order pursuant to one or more customer and appropriate sale and sale procedures motions . . . .") Docket #9 at 46.

12. Based upon information and belief, including a telephone conversation with Debtor's counsel, and subject to further discovery, the United States Trustee understands that:

- ITG will make its stalking horse bid regardless of whether the Court approves its bid protections, including its break-up fee, in advance of the auction; and

- the break-up fee represents an estimate of ITG's "lost opportunity costs" in negotiating its stalking horse bid prior to the petition date.

**LEGAL FRAMEWORK**

13. A debtor in possession has a fiduciary duty to the estate's creditors. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352, 355 (1985); *see also Bezanson v. Thomas (In re R & R Assocs. of Hampton)*, 402 F.3d 257,

5

266 (1st Cir. 2005) (stating that debtor in possession duties "include the maximization of the value of the debtor's assets").

14. Where a debtor requests bankruptcy court authorization to sell substantially all of its asset to a stalking horse bidder under a 11 U.S.C. § 363(b) auction process

> it has become common for the buyer to demand a range of buyer protections . . . , including a breakup or topping fee, expense reimbursement[,] overbid increments . . . bidder qualification requirements, short deadlines for competing bidders' due diligence and submission of competing bids, and deadlines for court approval of the bid protections and the sale. These protections, which are common in nonbankruptcy sales, provide the prospective buyer with some confidence that either the transaction will succeed or the buyer will be compensated for the failure.
>
> Such protections are appropriate where the prospective buyer provides something of value to the estate in exchange, typically setting a floor under the auction by committing to purchase the assets at a minimum price. Thus, a court need not approve a break-up fee where the buyer is committed to its bid at the auction whether or not the court approves the fee . . . .

3 COLLIER ON BANKRUPTCY at 362.02[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2012) (collecting cases and citing, among others, *In re Reliant Energy Channelview LP* 594 F.3d 200 (3d Cir. 2010)).

15. Break-up fees and reimbursement of expenses for unsuccessful stalking horse bidders constitute administrative expenses should arguably be

evaluated by the bankruptcy court under 11 U.S.C. § 503(b), not under the business judgment standard of 11 U.S.C. § 363(b), to determine whether they are necessary to preserve the value of the estate. *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 535-537 (3d Cir. 1999) (affirming denial of break-up fee and administrative expenses requested by unsuccessful stalking horse bidder, because they were not necessary to preserve the value of the estate). *Accord In re Reliant Energy Channelview LP*, 594 F.3d at 206 (noting that it is "permissible to offer a break-up fee and reimbursement for expenses to induce an initial bid, provided the allowance of the fee does not give an advantage to a favored purchaser over other bidders by increasing the cost of acquisition . . . ."). *Compare Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 657 (applying the business judgment standard and affirming a break-up fee under a three-part test, "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?) . . . ."

16. Local Rule 6004-1 requires a debtor to request authorization to approve the bid procedures, where the proposed break-up fees "exceed the

lesser of $50,000 or 5% of the proposed original purchase price . . . and the minimum increase required for a higher offer . . . exceed[s] 5% of the proposed original purchase price . . . ." MLBR 6004-1.

**ARGUMENT**

17. It is undisputed that the terms and conditions of the Bid Procedures Motion, including ITG's break-up fee, its expense reimbursement and the minimum overbid, create a $700,000 threshold barrier to any counterbidder. Bid Procedures Motion.

18. A 7.95% increase over ITG's stalking horse bid will unnecessarily chill any counterbids for the Debtor's assets, and it gives ITG an unnecessary advantage over other potential purchasers. Because ITG's bid protections neither enhance the bidding process nor preserve value for the estate, they fail under either the administrative expense or the business judgment test. *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 535-537; *In re Integrated Resources, Inc.*, 147 B.R. 650, 657.

19. The Debtor has not demonstrated that ITG's break-up fee and its expense reimbursement represent the actual, reasonable, and necessary costs of preserving the estate under 11 U.S.C. 503(b), particularly where, as here, its bid is not contractually contingent upon them. *See* APA. *In re Reliant Energy*

*Channelview LP*, 594 F.3d at 204-205.

20. The Bid Procedures Motion provides no information on how the amount of ITG's break-up fee was determined. Bid Procedures Motion. Specifically, it is unclear whether lost opportunity costs are relevant in determining creditors' claims, whether pre-petition or post-petition. *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., LTD (in re Timbers of Inwood Forest Assoc., LTD)*, 808 D.2d 363, 363-364 (5th Cir. 1987) ("We hold today that the adequate protection provisions of the Bankruptcy Code, §§ 362(d)(1) and 361, do not require periodic postpetition payments for interest or lost opportunity cost to an undersecured creditor to compensate it for the delay of the Chapter 11 reorganization proceeding during the pendency of the automatic stay . . . ."), *aff'd*, 484 U.S. 365 (1988).

21. The Bid Procedures Motion similarly provides no information on how the minimum overbid was calculated. The $198,000 figure appears arbitrary.

22. The Court should only approve any reimbursement expenses claimed by ITG upon application and a showing a reasonableness. *See* MLBR 6004-1.

23. In addition, any order approving the Procedures should include a

Committee as a Consulting Party with respect to the Bidding Process and any reservation of rights as well as a participant in the Auction.[1]

24. The rapid pace and the terms and conditions of the sale transaction contemplated in the Bid Procedures Motion are not designed to maximize value for creditors. ITG's bid protections will instead inhibit competing offers and result in an unfair sale process.

25. Because the harm posed by ITG's bid protections outweighs their benefit to the estate, the Court should deny them, defer considering them until after the auction has been conducted or reduce them.

**REQUESTED RELIEF**

For these reasons, the United States Trustee requests that the Court enter orders: 1) denying the Bid Procedures Motion or, alternatively, modifying the terms and conditions of the bidding procedures – ITG's bid protections - as set forth above; and 2) granting him all such other and further legal and equitable relief to which he may be entitled.

---

[1] The United States Trustee should be separately identified as an Auction participant.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE,
REGION 1

By: */s/ Eric K. Bradford*
Paula R. C. Bachtell BBO# 564155
Eric K. Bradford BBO# 560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
PHONE: (202) 306-3815
FAX: (617) 565-6368
Paula.bachtell@usdoj.gov
Eric.K.Bradford@USDOJ.gov

Dated:   September 21, 2021.

## CERTIFICATE OF SERVICE

I certify that on September 21, 2021, true and correct copies of the foregoing objection were served by CM/ECF only upon the individuals who filed notices of appearance in the Court's CM/ECF database, including counsel for the Debtor, who are identified below.

        Respectfully submitted,

        WILLIAM K. HARRINGTON
        UNITED STATES TRUSTEE
        REGION 1

By:    /s/ Eric K. Bradford
        Eric K. Bradford BBO#560231
        Department of Justice
        John W. McCormack Post Office & Courthouse
        5 Post Office Square, 10th Floor, Suite 1000
        Boston, MA 02109-3934
        PHONE: (202) 306-3815
        FAX: (617) 565-6368
        Eric.K.Bradford@USDOJ.gov

Dated: September 21, 2021.

Hanna Ciechanowski on behalf of Debtor Tri-Wire Engineering Solutions, Inc.
ciechanowski@casneredwards.com,
luo@casneredwards.com;kohadr97042@notify.bestcase.com

Michael J. Goldberg on behalf of Debtor Tri-Wire Engineering Solutions, Inc.
goldberg@casneredwards.com

Peter J. Haley on behalf of Creditor Massachusetts Capital Resource Company
peter.haley@nelsonmullins.com, marie.moss@nelsonmullins.com

William J. Hanlon on behalf of Creditor JPMorgan Chase Bank, N.A.
whanlon@seyfarth.com, bosdocket@seyfarth.com,2875011420@filings.docketbird.com

James M. Liston on behalf of Creditor Massachusetts Growth Capital Corporation
jml@bostonbusinesslaw.com

## CERTIFICATE OF CONFERENCE

     I certify that on September 20, 2021, I exchanged emails and spoke with the Debtor's attorney, Michael J. Goldberg, Esq., regarding the foregoing objection. We narrowed the issues but reached no final agreement.

                      Respectfully submitted,

                      WILLIAM K. HARRINGTON
                      UNITED STATES TRUSTEE
                      REGION 1

By:    */s/ Eric K. Bradford*
        Eric K. Bradford BBO#560231
        Department of Justice
        John W. McCormack Post Office & Courthouse
        5 Post Office Square, 10th Floor, Suite 1000
        Boston, MA 02109-3934
        PHONE: (202) 306-3815
        FAX: (617) 565-6368
        Eric.K.Bradford@USDOJ.gov

Dated: September 21, 2021.